# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RIVER NORTH 414 LLC, | ) | Case No. 16-17324 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |

**DISCLOSURE STATEMENT PURSUANT TO SECTION 1125
OF THE BANKRUPTCY CODE FOR DEBTOR'S SECOND PLAN OF
<u>REOGANIZATION DATED JUNE 2, 2017</u>**

Dated:  June 2, 2017

Respectfully submitted,

**RIVER NORTH 414 LLC**

By: ___/s/ Thomas R. Fawkes_____

Harley J. Goldstein, Esq.
Thomas R. Fawkes, Esq.
Sean P. Williams, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
111 West Washington Street, Suite 1221
Chicago, Illinois 60602
Telephone: (312) 337-7700
Facsimile: (312) 216-0734
e-mail: tomf@goldmclaw.com

*Counsel for the Debtor and Debtor in
Possession*

**DISCLOSURE STATEMENT DATED JUNE 2, 2017**
**SOLICITATION OF VOTES WITH RESPECT TO**
**DEBTOR'S PLAN OF REORGANIZATION**

All creditors entitled to vote thereon are urged to vote in favor of the Plan of Reorganization of River North 414 LLC ("*River North*" or the "*Debtor*") dated June 2, 2017 and attached hereto as <u>Exhibit 1</u> (the "*Plan*") to this Disclosure Statement (the "*Disclosure Statement*"). A summary of the voting instructions is set forth in Section II.D.1. Additional instructions are contained on the ballots distributed to creditors entitled to vote on the Plan (the "*Ballots*"). **To be counted, your Ballot must be duly completed, executed, and received by [_____] (the "*Voting Deadline*"), unless extended in writing by the Debtor**. The Debtor believes that the Plan is in the best interests of creditors and urges all creditors to vote in favor of the Plan.

**All creditors entitled to vote on the Plan are encouraged to read and carefully consider this entire Disclosure Statement, including the Plan attached as Exhibit 1 and the Risk Factors described under Section VII, prior to submitting Ballots in response to this solicitation.**

All capitalized terms used in this Disclosure Statement and not otherwise defined herein shall have the meanings given to them in the Plan. The summaries of the Plan and other documents contained in this Disclosure Statement are qualified by reference to the Plan itself, the exhibits thereto and the documents described therein.

**Any statements in this Disclosure Statement concerning the provisions of any other document are not complete descriptions of such document, and in each instance reference is made to such document for the full text thereof.**

No person is authorized by the Debtor in connection with the Plan or the solicitation of acceptances of the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference or referred to herein, and, if given or made, such information or representation may not be relied upon as having been authorized by the Debtor. Although the Debtor will make available to creditors entitled to vote on acceptance of the Plan such additional information as may be required by applicable law prior to the Voting Deadline, the delivery of this Disclosure Statement will not under any circumstances imply that the information herein is correct as of any time after the date hereof.

The information contained in this Disclosure Statement, including the information regarding the history, businesses and operations of the Debtor, the financial information regarding the Debtor and the liquidation analyses and projections relating to the Debtor, is included for purposes of soliciting acceptances of the Plan, and not for any other purpose. Nothing in this Disclosure Statement is intended to be or constitutes a concession by or admission of the Debtor for any purpose.

# TABLE OF CONTENTS

## Contents

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     CLAIMS CLASSIFICATION AND VOTING UNDER THE PLAN ............................ 1

    II.A.      Introduction ............................................................................................ 1

    II.B.      Summary of Classes and Treatment of Claims and Interests ......................... 1

    II.C.      Unclassified Claims ................................................................................ 3

        II.C.1.      Payment of Administrative Claims .................................................... 3

        II.C.2.      Payment of Priority Tax Claims ....................................................... 4

    II.D.      Voting on and Confirmation of the Plan ...................................................... 4

        II.D.1.      Voting Procedures and Requirements ................................................ 4

        II.D.2.      Hearing on Confirmation of the Plan ................................................ 5

III.    BACKGROUND AND CAPITAL STRUCTURE AS OF THE PETITION DATE ........ 6

    III.A.      Secured Debt, and Settlement with Republic Bank of Chicago ..................... 6

    III.B.      Dismissal of PTI's Chapter 11 Case .......................................................... 8

    III.C.      Unsecured Non-Insider Trade Debt ............................................................ 8

    III.D.      Allowance of PTI Unsecured Claim .......................................................... 8

    III.E.      Debtor Equity Interests .......................................................................... 8

IV.     EVENTS DURING THE CHAPTER 11 CASES ............................................... 8

    IV.A.      Commencement of Chapter 11 Cases ......................................................... 8

    IV.B.      Pleadings ............................................................................................. 8

    IV.C.      Proposed Plan ....................................................................................... 10

    IV.D.      Claims Process and Bar Date ................................................................... 11

V.      REQUIREMENTS FOR CONFIRMATION OF THE PLAN ............................... 11

    V.A.      Requirements of Section 1129(a) of the Bankruptcy Code ......................... 11

    V.B.      Requirements of Section 1129(b) of the Bankruptcy Code ......................... 12

        V.B.1.      Fair and Equitable ....................................................................... 12

        V.B.2.      "Unfair Discrimination" ................................................................ 13

    V.C.      Best Interests of Creditors Test; Liquidation Analysis ................................ 13

    V.D.      Feasibility ............................................................................................ 13

VI.     RISK FACTORS .................................................................................... 14

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| VI.A. | Risks In Connection with the Reorganization Cases | 14 |
| VI.A.1. | Risk of Non-Confirmation of the Plan | 14 |
| VI.A.2. | Nonconsensual Confirmation | 14 |
| VI.A.3. | Conditions Precedent to the Effectiveness of the Plan | 15 |
| VI.A.4. | The Debtor May Object to the Amount, or the Priority Status, of a Claim | 15 |
| VI.A.5. | Causes of Action | 15 |
| VI.A.6. | Operational Risk | 15 |
| VII. | MEANS FOR IMPLEMENTATION OF THE PLAN | 15 |
| VII.A. | Continued Corporate Existence | 15 |
| VII.B. | Corporate Action and Revesting of Assets | 15 |
| VII.C. | Preservation of Rights of Action; Settlement of Claims and Releases | 16 |
| VII.C.1. | Preservation of Rights of Action by the Debtor | 16 |
| VII.C.2. | Comprehensive Settlement of Claims and Controversies | 16 |
| VII.C.3. | Release of Liens | 16 |
| VII.D. | Cancellation and Surrender of Instruments, Securities and Other Documentation | 17 |
| VIII. | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 18 |
| IX. | PROVISIONS GOVERNING PLAN DISTRIBUTIONS | 18 |
| IX.A. | Distributions for Claims Allowed as of the Effective Date | 18 |
| IX.B. | Method of Distributions to Holders of Claims | 18 |
| IX.C. | Delivery of Distribution and Undeliverable or Unclaimed Distributions | 18 |
| IX.C.1. | Delivery of Distributions | 18 |
| IX.C.2. | Undeliverable Distributions | 18 |
| IX.D. | Set-Offs | 19 |
| IX.E. | Postpetition Interest | 19 |
| X. | PROCEDURES FOR RESOLVING DISPUTED CLAIMS | 19 |
| X.A. | Prosecution of Objection to Claims | 19 |
| X.B. | Treatment of Disputed Claims | 20 |
| X.C. | Enforcement of Bar Date Order | 20 |

## TABLE OF CONTENTS
### (continued)

XI.      CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
         OF THE PLAN ............................................................................................... 20

         XI.A.      Conditions to Confirmation ........................................................... 20

         XI.B.      Conditions to the Effective Date .................................................... 20

XII.     DISCHARGE, INJUNCTION AND SUBORDINATION RIGHTS ............................ 21

         XII.A.     Discharge of Claims ...................................................................... 21

         XII.B.     Injunctions .................................................................................... 21

XIII.    FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE
         PLAN ........................................................................................................... 21

XIV.     ADDITIONAL INFORMATION ...................................................................... 22

XV.      RECOMMENDATION AND CONCLUSION ....................................................... 22

# I.      PRELIMINARY STATEMENT

Through the Plan, the Debtor seeks to confirm a plan that distributes the Debtor's Annual Profit to its unsecured creditors for the 2018-2021 fiscal years. Pursuant to the Debtor's projections (*see* Exhibit 4), the Debtor projects that general unsecured creditors (*i.e.*, Holders of Class 2 and Class 3 Claims) will recover approximately 11% of their prepetition claim.

River North 414 LLC is an Illinois limited liability company. River North owns and operates a bar and restaurant named Reverie, located at 414 N. Orleans St., Chicago, Illinois 60654. Reverie is located in the River North entertainment district just north of the Chicago Loop, and features and pan-Asian tavern menu and two floors of dining and lounge space.

The Debtor's Chapter 11 Case was previously jointly administered with the case of Premium Themes, Inc., an Illinois corporation (Case No. 16-17325). Prior to April 20, 2016, PTI owned and operated a bar and restaurant named Red Ivy, located at 3525 N. Clark St., Chicago, Illinois 60657 (located less than one block from Wrigley Field in the Wrigleyville entertainment district). As discussed elsewhere in this Disclosure Statement, PTI entered into a termination of its lease for the Red Ivy space and closed its business prior to the Petition Date. PTI is seeking to dismiss it chapter 11 case, as it has sufficient funds to pay all its remaining creditors in full.

# II.      CLAIMS CLASSIFICATION AND VOTING UNDER THE PLAN

## II.A.      Introduction

The following is a brief overview of certain provisions of the Plan. This overview is qualified by reference to the provisions of the Plan, which is attached hereto as Exhibit 1, and the exhibits thereto, as amended from time to time.

The confirmation of a plan, which is the vehicle for satisfying the rights of holders of claims against and equity interests in a debtor, is the overriding purpose of a chapter 11 case. Upon confirmation of a plan, it becomes binding on the Debtor and all of its creditors and stakeholders, and the obligations owed by the Debtor to those parties before the Effective Date are compromised and/or exchanged for the obligations specified in the plan. The Plan contemplates the Debtor's cash-flow being used to paying its creditors and is therefore properly characterized as a "Plan of Reorganization."

The Debtor believes the Plan is in the best interests of its estate and creditors. **All creditors entitled to vote on the Plan are urged to vote in favor of the Plan prior to 5:00 p.m., Central Time, _____, 2017, the ("*Voting Deadline*").**

## II.B.      Summary of Classes and Treatment of Claims and Interests

The Plan divides holders of Claims against and Interests in the Debtor into four (4) separate classes. The classes and proposed treatment, and the estimated percentage recovery for each class under the Plan is provided in the table below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims have not been

classified.  *See* Section II.C. of this Disclosure Statement for the provisions of the Plan governing such claims.

## SUMMARY OF CLASSIFICATION AND TREATMENT UNDER THE PLAN

The information set forth in the table on Pages 3 and 4 of this Disclosure Statement are taken from the Debtor's books and records and filed proofs of claim and are for illustrative purposes only.  The Debtor has not determined which Claims it plans to object to, or if objecting to any Claims is in the best interests of the Debtor and all parties in interest, but reserves the right to object to any Claim.  The below summary is not an admission of liability or an acceptance of liability for any Claim, but is provided in compliance with Local Rule 3016-1(1) to provide interested creditors with a summary of the Plan.  For a complete breakdown of the total amount of claims, please consult the Liquidation Analysis attached hereto as Exhibit 4.

| Class | Type of Claim | Status | Voting Right; Treatment | Estimated Number of Creditors; Estimated Amount of Claim | Treatment |
|---|---|---|---|---|---|
| Unclassified | Administrative Claims | - | - | Claimants: 2 Amount: $140,000. | Each Allowed Administrative Claim shall be paid by the Debtor, at its election, (i) in full, in Cash, in such amounts as such Administrative Claim is Allowed by the Bankruptcy Court upon the later of the Effective Date or the date upon which such Administrative Claim is Allowed or (ii) upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the Debtor or the Reorganized Debtor.  Any application for the payment of any Administrative Claims, such as and including the payment of any fees or reimbursement of expenses of any Professional, shall be Filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. |
| Unclassified | Priority Tax Claims | - | - | Creditors: 2 Amount: $212,000 | All Priority Tax Claims against River North shall be paid in the ordinary course according to the current agreement between the Debtor and such taxing authority, provided, however, that River North shall retain the right to assert, prosecute, and resolve objections to such Claims in the Bankruptcy Court at any time prior to the Effective Date. |

| 1 | River North Priority Claims | Unimpaired | Deemed to Accept | Creditors: 0<br><br>Amount: $0.00 | On, or as soon as reasonably practicable after, the later of the Effective Date, or the date a Class 1 Claim becomes an Allowed Class 1 Claim or is otherwise payable, each Holder of an Allowed Class 1 Claim shall be paid in full, in Cash. |
|---|---|---|---|---|---|
| 2 | River North Unsecured Claims | Impaired | Entitled to vote | Creditors: 10<br>Amount: $103,000 | Except to the extent that a Holder of an Allowed Claim in Class 2 agrees to a less favorable treatment, on the Annual Distribution Date, after the payment in full of all Priority Tax Claims, each Holder of a Class 2 Claim shall be paid its pro rata share of 30% of the Annual Profit of the Reorganized Debtor for each of the 2018-2021 fiscal years. Notwithstanding anything to the contrary, pro rata share shall be calculated by aggregating Class 2 and Class 3 Claims as if they were in the same Class. In no case will River North distribute greater than 30% of Annual Profit to its creditors. Pursuant to the Debtor's projections (*see* Exhibit 4), the Debtor projects Holders of Class 2 Claims will recover approximately 11% of their prepetition claim. |
| 3 | River North Insider Unsecured Claims | Impaired | Entitled to Vote | Creditors: 7<br>Amount: $1,350,000 | Except to the extent that a Holder of an Allowed Claim in Class 3 agrees to a less favorable treatment, on the Annual Distribution Date, after the payment in full of all Priority Tax Claims, each Holder of a Class 3 Claim shall be paid its pro rata share of 30% of the Annual Profit of the Reorganized Debtor for each of the 2018-2021 fiscal years. Notwithstanding anything to the contrary, pro rata share shall be calculated by aggregating Class 2 and Class 3 Claims as if they were in the same Class. In no case will River North distribute greater than 30% of Annual Profit to its creditors. Pursuant to the Debtor's projections (*see* Exhibit 4), the Debtor projects that Holders of Class 3 Claims will recover approximately 11% of their prepetition claim. |
| 4 | River North Equity Interests | Impaired | Deemed to Reject | Interest Holders: 30 | On the Effective Date, all Equity Interests in the Debtor shall be cancelled and extinguished in their entirety. |

## II.C.   Unclassified Claims

### II.C.1.       Payment of Administrative Claims

a.        Administrative Claims in General

Except as specified in Section II.A. of the Plan, and subject to the Administrative Claims Bar Date, unless otherwise agreed by the holder of an Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim will receive, in full satisfaction of its Administrative Claim, cash equal to the Allowed amount of such Administrative Claim either (i) as soon as practicable after the Effective Date or (ii) if the Administrative Claim is not allowed as of the

Effective Date, as soon as reasonably practical after the date on which an order allowing such Administrative Claim becomes a Final Order.

On or before the Effective Date, cash will be disbursed on account of Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930, as determined at the Confirmation Hearing by the Bankruptcy Court, in an amount equal to the amount of such Administrative Claims. All fees payable pursuant to 28 U.S.C. § 1930 shall be disbursed by the Debtor in accordance therewith until the closing of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code.

b.      Bar Dates for Administrative Claims

Except as otherwise provided in Section II.A. of the Plan, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims must File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date.

II.C.2.      Payment of Priority Tax Claims

All Priority Tax Claims against River North shall be paid in the ordinary course according to the current agreement between the Debtor and such taxing authority, provided, however, that River North shall retain the right to assert, prosecute, and resolve objections to such Claims in the Bankruptcy Court at any time prior to the Effective Date. Except to the extent that the applicable holder of an Allowed Priority Tax Claim has been paid by River North before the Effective Date, or the Reorganized Debtor and such holder agree to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtor, (i) payment in full in Cash made on or as soon as reasonably practicable after the Effective Date, (ii) regular installment payments in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (iii) such other amounts and in such other manner as may be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

II.D.      Voting on and Confirmation of the Plan

II.D.1.      Voting Procedures and Requirements

Pursuant to section 1124 of the Bankruptcy Code, only classes of claims against or equity interests in a debtor that are "impaired" under the terms of a plan are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified by the Plan, other than by curing defaults and reinstating maturity. Classes of claims and interests that are not impaired under the terms of a plan are not entitled to vote on such plan and are conclusively presumed to have accepted the plan. The classification of Claims and Interests under the Plan is summarized, together with an indication of whether each class of Claims or Interests is impaired or unimpaired, in Section II.B

- 4 -

above.  Under the terms of the Plan, only holders of Claims in Classes 2 and 3 are impaired and entitled to vote on the Plan.

Bankruptcy Rule 3017(d) provides that the "date [an] order approving the disclosure statement is entered," or such other date established by the court, is the record date for determining the "holders of stock, bonds, debentures, notes, and other securities" entitled to receive the materials specified in Bankruptcy Rule 3017(d), including ballots for voting on a plan of reorganization.

Please carefully follow all of the instructions contained on the Ballot or Ballots provided to you with this Disclosure Statement if you are entitled to vote on the Plan.  All Ballots must be completed and returned in accordance with the instructions provided.  It is of the utmost importance to the Debtor that you vote promptly to accept the Plan.  If you are entitled to vote and you did not receive a Ballot, received a damaged Ballot or lost your Ballot, please contact Debtor's counsel, Thomas R. Fawkes at Goldstein & McClintock LLLP via: e-mail at tomf@goldmclaw.com or telephone at (312) 219-6702.

**To be counted, your Ballot or Ballots must be received by no later than 5:00 p.m., Central Time, _____, 2017.  Votes cannot be transmitted orally, by email, or facsimile.** Accordingly, you must return your signed and completed Ballot, by mail, personal delivery or overnight courier promptly and **in advance**, so that it is **received** prior to **5:00 p.m., Central Time _____, 2017**.

Holders of Claims entitled to vote on the Plan may withdraw or modify their executed Ballots by delivering (or having their nominee deliver) to Debtor's counsel, prior to the Voting Deadline, a subsequent properly completed and duly executed Ballot.  After the Voting Deadline, withdrawals of or modifications to executed Ballots will not be permitted unless expressly agreed to by the Debtor in writing.  Withdrawal or revocation of votes accepting or rejecting the Plan may be affected only in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### II.D.2.        Hearing on Confirmation of the Plan

In order to confirm the Plan, the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on whether the Debtor have fulfilled the confirmation requirements of section 1129 of the Bankruptcy Code (the "*Confirmation Hearing*").  The Confirmation Hearing has been scheduled for _____, 2017 at __:__ _.m. (Central Time).  The Debtor expects that the Confirmation Hearing will be held in the courtroom of the Honorable Janet S. Baer, the United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn St., Courtroom 615, Chicago, Illinois 60604.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code for confirmation are met. Among such requirements are that the Plan:

(a)        is accepted by the requisite holders of Claims and Interests in each impaired class under the Plan;

(b)      provides that each creditor voting against the Plan in an impaired class will receive at least as much as it would if the Debtor was instead liquidated pursuant to chapter 7 of the Bankruptcy Code; and

(c)      is not likely to be followed by the liquidation, or need for further financial reorganization, of the Debtor.

The "cramdown" provisions of section 1129(b) of the Bankruptcy Code permit confirmation of a chapter 11 plan of reorganization in certain circumstances even if the Plan is not accepted by all impaired classes of claims and interests.  A detailed description of the requirements for confirmation of the Plan is contained in Section VI of this Disclosure Statement.

If any holders of impaired Claims votes to reject the Plan, the Debtor may seek to satisfy the requirements for confirmation of the Plan under the cramdown provisions of section 1129(b) of the Bankruptcy Code and, if required, may amend the Plan to conform to the standards of such section.

Any objection to Confirmation must be made in writing and must specify in detail the name and address of the objector, all grounds for the objection, and the amount of the Claim or Interest held by the objector.  Any such objections must be filed with the Bankruptcy Court and served upon the persons designated in the notice of the Confirmation Hearing included with this Disclosure Statement and in the manner and by the deadline described therein.

## III.      BACKGROUND AND CAPITAL STRUCTURE AS OF THE PETITION DATE

### III.A.  Secured Debt, and Settlement with Republic Bank of Chicago

As of the Petition Date, PTI and River North were jointly indebted in the principal amount of $900,000 pursuant to a promissory note (the "*Note*"), dated March 26, 2014 (the "*Debt*"), issued by PTI and River North 414, jointly and severally as co-borrowers, to Edgebrook Bank.  The Note matured on March 26, 2015, and the principal balance of the Note was not paid on the maturity date.  As security for the repayment of the Debt, each of PTI and River North executed a Commercial Security Agreement, dated as of March 26, 2014, pursuant to which both pledged a first-priority security interest in certain of their respective personal property assets. Edgebrook Bank filed UCC-1 financing statements perfecting its security interests.

Subsequently, in May 2015, Edgebrook Bank was closed, and its assets and liabilities became subject to a receivership proceeding commenced by the Federal Deposit Insurance Corporation ("*FDIC*").  The FDIC assigned Edgebrook Bank's deposits and certain of its loan portfolio, including the Note, Commercial Security Agreements, UCC-1 Financing Statements, and related loan documents, to Republic Bank of Chicago ("*Republic Bank*").

Shortly after taking assignment of the Note, Republic Bank engaged in several litigation efforts to enforce and collect upon it.  On March 31, 2016, Republic Bank commenced civil proceedings, by the filing of counterclaims in the civil case captioned *WM Capital Management, Inc. v. Stejskal, et al.*, in the United States District Court for the Northern District of Illinois (Case No. 15-CV-8105, the "*District Court Case*") against River North and PTI and a third party

Lisa Hagadorn, seeking, *inter alia* a judgment in the full amount of the Debt, plus interest and fees, appointment of a receiver over River North and PTI, and foreclosure of Republic Bank's mortgage on Lisa Hagadorn's personal residence.

On April 18, 2016, an order was entered in the District Court Case appointing a Receiver for all of the non-real estate assets of PTI.  In addition, in the District Court Case, a hearing was scheduled for May 24, 2016 by Republic Bank on its Motion for the Appointment of a Receiver for all of the non-real estate assets of River North.

Republic Bank's collection efforts ultimately prompted River North and PTI to file their respective chapter 11 cases on May 24, 2016, and each of River North and PTI expressed their intention from the outset to utilize the protections of the Bankruptcy Code to resolve Republic Bank's claims in an expedient and cost-efficient manner.

The strategy for resolving the Republic Bank Debt was two-fold:  (i) recovering certain pre-Petition Date equity distributions made to PTI shareholders and (ii) negotiating with Republic Bank on a global settlement that would result in the satisfaction of the Debt and broad releases of the Debtor and the PTI shareholders.  This strategy ultimately proved successful.

Shortly after the Petition Date, PTI made a demand upon each of its shareholders, requesting that they return a portion of the equity distribution that they received from a $3.125 million lease termination payment that was received by PTI from its landlord, Amalgamated Properties, L.L.C.  PTI alleged that these equity distributions constituted avoidable fraudulent transfers pursuant to section 548(a) of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act. Prior to a deadline of July 8, 2016, twenty-three (23) of PTI's twenty-seven (27) shareholders voluntarily agreed to return a portion of their distributions.  After filing an adversary proceeding, three of the four holdout shareholders each agreed to participate in a settlement.  Litigation proceeds with respect to the final holdout shareholder.

Concurrently, PTI engaged in negotiations with Republic Bank concerning the resolution of Republic Bank's claims.  The parties ultimately agreed that if PTI made a payment of $900,000 to Republic Bank by no later than September 30, 2016, Republic Bank would agree to accept such amount in full satisfaction of the Debtor's Debt obligations, and would agree to release (i) the Debtor; (ii) all shareholders participating in the settlement; and (iii) two individual guarantors.

Between shareholder settlement payments and Cash in the PTI estate, PTI successfully raised, and transmitted $900,000.00 to Republic Bank (the "*Republic Payment*") by the September 30, 2016 deadline.  The Bankruptcy Court entered an order approving the settlements between (i) the Debtor and Republic Bank and (ii) PTI and the participating shareholders (Docket No. 58, the "*PTI Settlement Order*").  Accordingly, the Debtor no longer have any secured indebtedness.  Moreover, as a result of the settlements, Republic Bank withdrew its *Motion for Appointment of a Chapter 11 Trustee* (Docket No. 15 in Case No. 16-17325, the "*Trustee Motion*"), and a September 20, 2016 evidentiary hearing scheduled for both the Trustee Motion and PTI's *Motion for Entry of an Order Approving Settlement Agreement Between Premium Themes, Inc. and Participating Shareholders* (Docket No. 44 in Case No. 16-17324, the "*Settlement Motion*") was canceled.

### III.B. Dismissal of PTI's Chapter 11 Case

PTI no longer has any secured indebtedness and has sufficient funds to pay all undisputed Claims.  Thus, PTI is filing a motion to dismiss its chapter 11 case concurrently herewith (or shortly hereafter).  The dismissal will not affect the rights of any creditors or parties in interest to seek recovery from PTI under state (or other applicable law), to the extent such parties believe they have not been paid in full.  Further, the dismissal will not affect any creditors of River North.  PTI's remaining cash reserves will go towards the payment of Administrative Claims.

### III.C. Unsecured Non-Insider Trade Debt

Class 2 (Unsecured Claims) – Holders of non-insider River North Unsecured Claims are owed approximately $103,000.

Class 3 (Insider Unsecured Claims) – Holders of Insider Unsecured Claims are owed approximately $1,350,000, which amount includes the PTI Claim, as discussed in section III.D.

### III.D.  Allowance of PTI Unsecured Claim

PTI paid the entire share of River North and PTI's joint indebtedness on the Debt, despite all of the loan proceeds going directly to River North to fund its operations.  Further, PTI currently holds an Equity Interest in River North that is being extinguished under this Plan.

Given that PTI (a) paid the entire share of the Republic Payment, despite not receiving any of the benefit; (b) holds an Equity Interest in River North that will be extinguished by the Plan; and (c) will otherwise be receiving nothing under this Plan, River North believes that it is necessary and appropriate to allow the PTI Unsecured Claim.

### III.E.  Debtor Equity Interests

Class 4 (Equity Interests) – On the Effective Date, all Equity Interests in River North shall be cancelled and extinguished in their entirety.

As consideration for the Equity Contribution, Jesse Boyle, Louis Canellis, and Nick O'Meara shall be the new Holders of Equity Interests and the members of River North.  Jesse Boyle shall be the managing member.

## IV.    EVENTS DURING THE CHAPTER 11 CASES

### IV.A.      Commencement of Chapter 11 Cases

On May 24, 2016, River North and PTI commenced their Chapter 11 Cases by filing voluntary petitions for relief in the Bankruptcy Court.  River North's case is at Case No. 16-17324 and PTI's case (which PTI is seeking to dismiss, as discussed above) is at Case No. 16-17325.

### IV.B.      Pleadings

On May 31, 2016, the Bankruptcy Court entered an order jointly consolidating River North and PTI's chapter 11 cases for administrative purposes only [Docket No. 10], and designating River North's case as the lead case.

On June 29, 2016, the Debtor filed an application to retain Goldstein & McClintock LLLP as their lead bankruptcy counsel [Docket No. 23], which was approved by the Bankruptcy Court on July 6, 2016 [Docket No. 30].

The following material pleadings have been filed in the Debtor's Chapter 11 Cases (except where noted, such pleadings were filed in the lead case of River North):

- On July 22, 2016, River North filed a motion for use of Republic Bank's cash collateral [Docket No. 32]. Republic Bank and River North entered into several agreed interim orders authorizing River North's use of cash collateral on a limited basis [Docket Nos. 35, 50, 59]. The settlement of the Republic Bank Debt ultimately resolved Republic Bank's objections to River North's use of cash collateral.

- Republic Bank's Motion to Appoint Trustee [Case No. 16-17325, Docket No. 15]. This motion was withdrawn in light of the global settlement discussed above.

- Motion for Entry of an Order Approving Settlement Agreement Between Premium Themes, Inc. and Participating Shareholders [Docket No. 44]. Pursuant to this Motion, the Debtor sought entry of an order approving the settlement of PTI's fraudulent transfer claims with certain of its shareholders, as well as releases by the Debtor and Republic Bank of those shareholders. This Motion was contested by Republic Bank, but was ultimately resolved through the PTI Shareholder Settlement.

- Debtor's Motion to Set Last Day to File Proofs of Claim [Docket No. 70]. The Bankruptcy Court entered an order setting a proof of claim bar date of December 12, 2016 [Docket No. 74].

- O.P., L.L.C.'s (the "*Landlord*") *Motion for Relief from the Automatic Stay* (the "*Lift Stay Motion*") [Docket No. 110], which sought to terminate that certain License Agreement dated May 1, 2015 by and between River North and the Landlord, which allowed River North occupy the restaurant premises located at 414 North Orleans Street, in Chicago, Illinois (the "*Property*") on a month-to-month basis and terminated the Debtor's possessory and leasehold interests under a prior lease. The Landlord sought to lift the automatic stay "for cause" under section 362(d)(1) of the Bankruptcy Code and alleged that the Debtor would be unable to confirm a plan while subject to the License Agreement, that the Debtor had no equity in the Property, and that the Property was not necessary for an effective reorganization under section 362(d)(2) of the Bankruptcy Code.

- River North's *Motion for Entry of an Order (I) Approving and Authorizing Debtor to Perform Under: (A) Letter Agreement; (B) Occupancy Agreement; and (C) Release of Claims with O.P., L.L.C. and (II) Shortening Notice* [Docket No. 125] (the "*Landlord Settlement Motion*"). The Landlord Settlement Motion, *inter alia*, provided that River North enter into the following agreements with the Landlord:

  o Letter Agreement – Upon meeting certain conditions, including: (a) the payment of $14,000 for incidental charges and OP's enforcement costs and attorneys' fees under the License Agreement; (b) entry into the Release of Claims and the Principal Release of Claims; (c) the payment of a $30,000 security deposit representing two months' occupancy payments; (d) continued payment of license payments under the License Agreement up to June 1, 2017; (e) the payment of $15,000 for June occupancy on or before May 31, 2017; and (f) confirmation of a plan of reorganization on or before May 31, 2017, OP has agreed to enter into the Occupancy Agreement, with a commencement date of June 1, 2017.

  o Release of Claims – Under this agreement, the Debtor agrees to release any claims it may have against OP, through the date of execution of the Letter Agreement.

  o Occupancy Agreement – The Occupancy Agreement extends and supersedes the License Agreement and allows the Debtor to continue to use the Property and operate Reverie until May 31, 2018 in exchange for, *inter alia*, payment of the Security Deposit and monthly occupancy payments in the amount of $15,000.00.

On April 26, 2017, the Landlord Settlement Motion was granted [Docket No. 126] and River North entered into each of the Letter Agreement, the Release of Claims, and the Occupancy Agreement. Given these agreements, River North will remain in the Property and continue operating until at least May 31, 2018 (provided that certain requirements are met).

### IV.C.     Proposed Plan

River North's Plan contemplates Holders of Unsecured Claims being compensated from River North's future cash flow over the 2018-2021 fiscal years. Specifically, the Plan requires River North to distribute 30% of its Annual Profit (defined as earnings after the payment of all operational expenses, including taxes and interest on any outstanding loans, which shall be measured on or before the sixtieth (60th) day after the last day of the Reorganized Debtor's fiscal year) on the Annual Distribution Date, which is defined as one hundred and twenty (120) days after the last day of the Reorganized Debtor's fiscal year to Holders of Class 2 and Class 3 Claims. Pursuant to Local Rule 3016-1, a projected cash flow spread over five fiscal years is attached hereto as <u>Exhibit 2</u>. The Debtor does not prepare annual financial statements and therefore will not be providing financial statements. However, the Debtor will be providing tax documents (Form 1065) that were filed with the Bankruptcy Court, as well as the summary page to each monthly operating report filed in its Chapter 11 Case to give creditors a snapshot of the

Debtor's financial condition pursuant to Local Rule 3016-1. These documents are attached hereto as <u>Exhibit 3</u>.

The Plan further provides that Holders of Class 2 and Class 3 Claims will be treated exactly the same. The *pro rata* share paid to all Holders of Class 2 and Class 3 Claimants shall be calculated by aggregating Class 2 and Class 3 Claims as if they were in the same Class. For the avoidance of doubt, nothing herein or in the Plan requires River North to distribute greater than 30% of Annual Profit to its creditors.

The members of River North, Jesse Boyle, Lou Canellis, and Nick O'Meara shall be responsible for making such Distributions to creditors.

### IV.D.    Claims Process and Bar Date

By order dated October 12, 2016 [Docket No. 74], the Bankruptcy Court established a deadline of December 12, 2016 for creditors to file proofs of claim in the Debtor's chapter 11 cases.

River North believes it may have valid objections to some of the Claims that have been Filed. Accordingly, the Debtor intend to file objections to Claims on a number of grounds, including, among others, that such Claims: (a) are duplicative of other Claims asserted against the Debtor; (b) were filed after the applicable bar date; (c) have been amended and superseded by subsequently filed Claims; (d) overstate the Debtor's liability; (e) do not represent a valid obligation of the Debtor; and/or (f) were asserted with the improper priority status.

## V.    REQUIREMENTS FOR CONFIRMATION OF THE PLAN

### V.A.    Requirements of Section 1129(a) of the Bankruptcy Code

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including that:

(a)    the Plan otherwise complies with the applicable provisions of the Bankruptcy Code;

(b)    the Debtor has complied with the applicable provisions of the Bankruptcy Code;

(c)    the Debtor, as proponent of the Plan, has proposed the Plan in good faith and not by any means forbidden by law;

(d)    disclosure regarding the Plan has been made that is required by section 1125 of the Bankruptcy Code;

(e)    the Plan has classified Claims and Interests in a permissible manner;

(f)    the disclosures required under section 1129(a)(5) concerning the identity and affiliations of persons who will serve as officers, directors, and voting trustees of the Debtor have been made;

(g)     the Plan is in the "best interests" of all holders of Claims or Interests in an impaired Class by providing to creditors or interest holders on account of such Claims or Interests property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim or Interest in such Class has accepted the Plan;

(h)     the Plan has been accepted by the requisite votes of creditors and equity interest holders in impaired classes, except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code;

(i)     at least one Class of Claims that is impaired under the Plan has voted to accept the Plan, without including any acceptance of the Plan by any insider;

(j)     the Plan is feasible; and

(k)     all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid, or the Plan provides for the payment of such fees on the Effective Date.

### V.B.     Requirements of Section 1129(b) of the Bankruptcy Code

The Bankruptcy Code permits confirmation of a plan even if it is not accepted by all impaired classes, as long as all of the other requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code have been met and the plan is "fair and equitable" and does not "discriminate unfairly" as to any impaired class that has not accepted the plan.  These so-called "cramdown" provisions are set forth in section 1129(b) of the Bankruptcy Code.

### V.B.1.     Fair and Equitable

The Bankruptcy Code establishes different "cramdown" tests for determining whether a plan is "fair and equitable" with respect to dissenting impaired classes of secured creditors, unsecured creditors and equity interest holders as follows:

Unsecured Creditors.  A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides that:  (a) each holder of a claim included in the rejecting class receives or retains under the plan, property of a value, as of the effective date of the plan, equal to the amount of its allowed claim; or (b) the holders of claims and interests that are junior to the claims of the rejecting class will not receive or retain any property under the plan on account of their existing interests.

Holders of Interests.  A plan is fair and equitable as to a class of interests that rejects the plan if the plan provides that:  (a) each holder of an equity interest included in the rejecting class receives or retains under the plan property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of (i) any fixed liquidation preference to which such holder is entitled, (ii) the fixed redemption price to which such holder is entitled or (iii) the value of the interest; or (b) the holder of any interest that is junior to the interests of the rejecting class will not receive or retain any property under the plan.

In the event the Debtor does not receive sufficient votes in favor of the Plan from the holders of Impaired Claims for such classes to have accepted the Plan, the Debtor reserves the right to seek confirmation through cramdown, to modify the Plan, or to determine, in its sole discretion, not to seek to confirm the Plan.

### V.B.2.     "Unfair Discrimination"

A plan of reorganization does not "discriminate unfairly" if a dissenting class is treated substantially equally with respect to other classes similarly situated, or any discrimination among the classes is determined not to be unfair by the Bankruptcy Court.

### V.C.     Best Interests of Creditors Test; Liquidation Analysis

Notwithstanding acceptance of the Plan by each impaired Class, to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such impaired Class who has not voted to accept the Plan.  If an impaired Class does not accept the Plan, the "best interests" test requires that the Bankruptcy Court find that the Plan provides to each member of such impaired Class a recovery on account of the member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such member would receive if River North were liquidated under chapter 7 of the Bankruptcy Code on such date.

Classes 2, 3, and 4 are impaired under the Plan.  To estimate what members of the impaired Classes would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the cash that would be available if each of the Chapter 11 Cases were converted to a chapter 7 case under the Bankruptcy Code and each of the respective Debtor's assets were liquidated by a chapter 7 trustee (the "*Liquidation Value*").  The Liquidation Value of River North would consist of the net proceeds received from the disposition of such Debtor's assets plus any cash held by such Debtor.

The information contained in <u>Exhibit 4</u> hereto provides a summary of the Liquidation Values of the Debtor's interests in property, assuming a chapter 7 liquidation in which one or more trustees appointed by the Bankruptcy Court would liquidate each Debtor's properties and interests.  The Liquidation Values were prepared solely for use in this Disclosure Statement and do not represent values that are appropriate for any other purpose.  Nothing in this analysis will be intended to or constitute a concession by or admission of any Debtor for any purpose.

The Debtor believe that a chapter 7 liquidation of River North's Estate would result in diminution in the value to be realized by holders of Claims, as compared to the proposed distributions under the Plan.

### V.D.     Feasibility

In connection with confirmation of the Plan, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to section 1129(a)(11) of the Bankruptcy Code, which requires that the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

- 13 -

River North has very few hard assets and liquidation of its business would likely see Holders of Unsecured Claims recover pennies on the dollar. Given River North's projections (*See* Exhibit 2), Holders of Unsecured Claims seek to recover far more if River North continues to operate and make payments based on its Annual Profit. Further, because River North will make payments to creditors based on its Annual Profit, there is no chance that River North will default or become insolvent simply because of the Plan payments. Accordingly, the Plan is feasible.

## VI. RISK FACTORS

Prior to voting on the Plan, each holder of a Claim entitled to vote should consider carefully the risk factors described below, as well as all of the information contained in this Disclosure Statement, including the Exhibits hereto. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation. See Section XV for a discussion of certain tax considerations in connection with the Plan.

### VI.A. Risks In Connection with the Reorganization Cases

### VI.A.1. Risk of Non-Confirmation of the Plan

Even if all impaired Classes accept or are deemed to accept the Plan, the Plan may still not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code, which sets forth the requirements for Confirmation, requires, among other things: (a) that Confirmation not be followed by a need for further reorganization or liquidation (*i.e.*, that the plan is "feasible"); (b) that the value of distributions to dissenting holders not be less than the value of distributions to such holders if the Debtor was liquidated under chapter 7 of the Bankruptcy Code; and (c) that the Plan and the Debtor otherwise complies with the applicable provisions of the Bankruptcy Code. Although the Debtor believes that the Plan will meet all of the applicable requirements, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### VI.A.2. Nonconsensual Confirmation

Pursuant to the "cramdown" provisions of section 1129 of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan at the Debtor's request if, excluding the acceptance of any "insider," at least one impaired Class has accepted the Plan and the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired Class that has not accepted the Plan.

The Debtor reserves the right to modify the terms of the Plan, as necessary, to seek Confirmation without the acceptance of all impaired Classes. Such modification could result in less favorable treatment for non-accepting Classes of Claims than the treatment currently provided for in the Plan. Further, in the event an impaired Class of Claims fails to approve the Plan, the Debtor may determine, in its sole discretion, not to seek Confirmation of the Plan.

### VI.A.3.        Conditions Precedent to the Effectiveness of the Plan

Even if confirmed, the Plan may still not become effective if the conditions to effectiveness set forth in Article VIII.C of the Plan are not satisfied, or duly waived in accordance with the Plan.  *See* Section XII to this Disclosure Statement for a description of the conditions to the effectiveness of the Plan.

### VI.A.4.        The Debtor May Object to the Amount, or the Priority Status, of a Claim

The Debtor reserves the right to object to the amount, or the Priority status, of any Claim. Any such Holder of a Claim will receive its specified share of the estimated distributions described in the Disclosure Statement only to the extent its Claim becomes an Allowed Claim.

### VI.A.5.        Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, until the Effective Date of the Plan, the Debtor will retain and may enforce causes of action against creditors.  Accordingly, a holder of a Claim may be subject to one or more such claims brought by the Debtor, even if such holder has voted in favor of the Plan.

### VI.A.6.        Operational Risk

While River North believes that its projections are feasible and that its business will generate sufficient Annual Profit to provide creditors a meaningful recovery, as with any business, River North will be subject to market volatility, economic conditions, and general business issues.  To the extent that River North's operational expenses, tax payments, and interest payments are greater than its profit for a fiscal year, creditors will not receive Distributions for that fiscal year.

## VII.    MEANS FOR IMPLEMENTATION OF THE PLAN

### VII.A.       Continued Corporate Existence

The Debtor shall continue to exist after the Effective Date as a separate corporate entity, in accordance with the laws of the State of Illinois, and pursuant to its certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws require amendment pursuant to the specific terms and conditions of this Plan.

### VII.B.       Corporate Action and Revesting of Assets

On or after the Effective Date, the Reorganized Debtor will be authorized to take such action as is necessary under the laws of the State of Illinois, federal law, and other applicable law to effect the terms and provisions of the Plan.  Without limiting the foregoing, the election and the appointment of mangers or officers, and any other matter involving the corporate structure of the Reorganized Debtor shall be deemed to have occurred and shall be in effect from and after

the Effective Date without any requirement of further action by the stockholders or directors of the Debtor or the Reorganized Debtor.

Except as otherwise set forth in the Plan or in the Confirmation Order, as of the Effective Date, all property of the Estate shall revest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances and other interests. From and after the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims or interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, the Debtor or the Reorganized Debtor may, without application to or approval by the Bankruptcy Court, pay fees that they incur after the Effective Date for professional fees and expenses.

### VII.C.    Preservation of Rights of Action; Settlement of Claims and Releases

### VII.C.1.    Preservation of Rights of Action by the Debtor

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, any Causes of Action, other than any Causes of Action against the Released Parties (or any other party that received a release in the Chapter 11 Cases) are expressly preserved until the Effective Date; if the Debtor have not commenced a Cause of Action by the Effective Date, such Cause of Action shall be deemed waived and release in its entirety.

### VII.C.2.    Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Article IX.E of the Plan, shall constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim, Interest, or any Distribution to be made pursuant to the Plan on account of any Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor and their respective property and Claim and Interest holders and is fair, equitable, and reasonable.

### VII.C.3.    Releases by the Debtor

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Estate, shall forever release, waive, and discharge all claims, obligations, suits, judgments, demands, debts, rights, Causes of Action, and liabilities, whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any**

- 16 -

way relating to (i) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (ii) the solicitation of acceptances and rejections of the Plan; (iii) the solicitation of the Releases; (iv) the Chapter 11 Case; (v) the property to be distributed under the Plan; or (vi) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, against the Debtor's Professionals.

### VII.C.4.     Releases by Holders of Claims and Interests

As of the Effective Date, all Holders of Allowed Claims and the current and former members, managers, Holders of Equity Interests, and employees of the Debtor (in their capacity as such) shall forever release, waive and discharge all Claims, obligations, suits, judgments, demands, debts, rights, causes of action and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan, and in the event of gross negligence or fraud), whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to (i) the Debtor; (ii) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan; (iii) the solicitation of acceptances and rejections of the Plan; (iv) the solicitation of the Releases; (v) the Chapter 11 Case; (vi) the property to be distributed under the Plan; or (vii) any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Case, against each of (a) the Debtor and (b) the Debtor's Professionals. For the avoidance of doubt, the Releases contained in this Plan do not release the Debtor from any of its liability to O.P., L.L.C. under that certain Occupancy Agreement dated June 1, 2017 or any related agreements by and between the Debtor and O.P., L.L.C.

### VII.C.5.     Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document assumed, entered into or delivered in connection with the Plan, to the extent not already released pursuant to the PTI Settlement Order, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article III of the Plan, all mortgages, deeds of trust, liens, or other security interests against any property asserted by Republic Bank of Chicago shall be fully released and discharged, and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, shall revert to River North, as the case may be.

### VII.D.     Cancellation and Surrender of Instruments, Securities and Other Documentation

Except as otherwise provided in the Plan or in any contract, instrument, or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article V of the Plan, the holders of or parties to such cancelled instruments, securities, and other documentation shall

have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided pursuant to the Plan.

## VIII.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any executory contracts or unexpired leases which have not (i) expired by their own terms on or prior to the Effective Date, or (ii) been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court, shall be deemed rejected by the Debtor as of the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any party to an executory contract or unexpired lease rejected pursuant to the Plan shall file a proof of claim by the Rejection Claims Bar Date in order for its Claim to be considered.

## IX.   PROVISIONS GOVERNING PLAN DISTRIBUTIONS

### IX.A.      Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, Distributions to be made on the Effective Date to holders of Claims that are Allowed Claims as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable.

### IX.B.      Method of Distributions to Holders of Claims

Cash payments, made pursuant to the Plan, shall be in U.S. dollars and, at the option and in the sole discretion of the Debtor (or where applicable, the Reorganized Debtor), be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by Debtor (or where applicable, the Reorganized Debtor).

### IX.C.      Delivery of Distribution and Undeliverable or Unclaimed Distributions

### IX.C.1.      Delivery of Distributions

Subject to the provisions of Rule 2002(g) of the Bankruptcy Rules, and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on timely filed proof(s) of claim or some other writing Filed with the Bankruptcy Court and served upon the Debtor.

### IX.C.2.      Undeliverable Distributions

a.        Holding of Undeliverable Distributions

If any Distribution to any Holder of an Allowed Claim is returned to the Debtor (or where applicable, the Reorganized Debtor) as undeliverable, no further Distributions shall be made to such Holder unless and until the Debtor (or where applicable, the Reorganized Debtor) are notified by such Holder, in writing, of such Holder's then-current address.   Upon such an

occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable.  All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind.  Nothing contained in the Plan shall require the Debtor or the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

b.     Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Debtor (or where applicable, the Reorganized Debtor) within ninety (90) days after the date of the initial Distribution made to such Holder, shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution.  If, after ninety days, Distributions remain unclaimed, unclaimed Distributions will become Forfeited Distributions and such amounts shall become the property of the Reorganized Debtor.

### IX.D.    Set-Offs

Consistent with applicable law, the Debtor may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtor or its Estate may hold against the Holder of such Allowed Claim; provided, however, that neither the failure to effect such a set off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or its Estate of any such claims, rights, and Causes of Action that the Debtor or its Estate may possess against such Holder.

### IX.E.    Postpetition Interest

Except as otherwise provided herein or as required by applicable bankruptcy law, Postpetition Interest shall not be disbursed on account of any Claim.

## X.    PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### X.A.    Prosecution of Objection to Claims

The Debtor shall file any objections to Disputed Claims prior to the Effective Date. All objections shall be litigated to Final Order if they cannot otherwise be settled by the Debtor. Any objections to Claims shall be resolved or litigated by the Debtor, in their sole discretion. The Debtor shall have sole and complete discretion to not review and/or object to scheduled or Filed Claims, including, without limitation, to not object to claims below a certain dollar amount to the extent the Debtor believe that such review and/or objection would be uneconomical.

### X.B.      Treatment of Disputed Claims

Notwithstanding any other provisions of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.

### X.C.      Enforcement of Bar Date Order

In accordance with section 502(b)(9) of the Bankruptcy Code, any Entity that failed to File a proof of Claim by the applicable Bar Date and was not otherwise permitted to File a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court is and shall be barred, estopped and enjoined from asserting any Claim against the Debtor (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent, and liquidated or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity.  All Claims Filed after the applicable Bar Date and for which no Final Order has been entered by the Bankruptcy Court determining that such Claims were timely Filed shall be disallowed and expunged.  Any Distribution on account of such Claims shall be limited to the amount, if any, listed in the applicable Schedules as undisputed, noncontingent, and liquidated.

## XI.   CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### XI.A.      Conditions to Confirmation

The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

1.      The entry of the Confirmation Order in form and substance satisfactory to the Debtor, and

2.      The Debtor being authorized to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with the Plan.

### XI.B.      Conditions to the Effective Date

For each Debtor, the occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.      <u>Confirmation Order</u>.  The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Debtor.

2.      <u>Effective Date Transactions</u>.  The Effective Date transaction contemplated in Article VIII.C of the Plan shall have been completed.

## XII.   DISCHARGE, INJUNCTION AND SUBORDINATION RIGHTS

### XII.A.   Discharge of Claims

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtor or any of their assets or properties, and, except as otherwise provided herein or in the Confirmation Order, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtor, shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (ii) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of a Claim based upon such debt accepted the Plan.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, subject to the Effective Date occurring.

### XII.B.   Injunctions

**Except as otherwise expressly provided in the Plan, all Entities that receive Distributions under the Plan and that have held, hold, or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtor, its Estate, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt or liability due to the Debtor.**

**By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth herein.**

## XIII.   FEDERAL INCOME TAX CONSEQUENCES OF CONSUMMATION OF THE PLAN

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  Neither the Debtor, nor any other party in interest have requested a ruling from the Internal Revenue Service (the "*IRS*") or an opinion of counsel concerning same.  This Disclosure Statement does not discuss all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light such holder's individual investment circumstances or to holders subject to special treatment under the federal income tax laws.

**ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN**

**TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS.    NOTHING CONTAINED HEREIN SHOULD BE CONSIDERED A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED ON A HOLDER'S INDIVIDUAL CIRCUMSTANCE.**

## XIV.    ADDITIONAL INFORMATION

Any statements in this Disclosure Statement concerning the provisions of any document are not necessarily complete, and in each instance reference is made to such document for the full text thereof.

## XV.    RECOMMENDATION AND CONCLUSION

The Debtor believe that the Confirmation and consummation of the Plan is preferable to all other alternatives.  Consequently, the Debtor urge all holders of Claims to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before **5:00 p.m., Central Time, on _____, 2017**.

*[Remainder of Page Intentionally Left Blank]*

Dated:  June 2, 2017                    Respectfully submitted,


                                        **RIVER NORTH 414, LLC**


                                        By: _____
                                             Jesse Boyle
                                             Authorized Representative


                                        COUNSEL:

                                        Harley J. Goldstein, Esq.
                                        Thomas R. Fawkes, Esq.
                                        Sean P. Williams, Esq.
                                        **GOLDSTEIN & MCCLINTOCK LLLP**
                                        111 West Washington Street, Suite 1221
                                        Chicago, Illinois 60602
                                        Telephone: (312) 337-7700
                                        Facsimile: (312) 277-2305
                                        Email: tomf@goldmclaw.com